District Court, it's really a very simple case. A woman went in for a surgery that should have taken between 3 and 8 hours, according to all the expert witnesses and the medical literature, and it took 13 1⁄2 hours. There's no explanation for the additional 5 to 9 hours of surgery. The operative report says the surgery was completely uncomplicated, but we know that after the incision was made in the patient, the primary instrument to be used for the surgery, the endoscope, was not in the surgical suite. So someone had to leave that sterile environment and go search for the endoscope, hopefully sterilize it, bring it back into the room. It was inserted into the patient. The light burnt out. Apparently it's the fourth time that instrument has malfunctioned, and yet there was no backup instrument. So another light source from a different instrument was jury-rigged. Again, someone's leaving the sterile environment and entering it again. The endoscope is retracted, the light put on, reinserted, retracted again. When that light burns out, the substitute light, reinserted again. So you've got 13 1⁄2 hours of trauma to the tissue and a great deal of manipulation by the endoscope. The trial court misunderstood, and what happened the next day, of course, as you can see from the pictures at 89, is a hole about the size of a baseball bat. I'm sorry, a baseball in her back. And coincidentally, a drain infection in her armpit, which if you look carefully at the testimony of the expert, Dr. Wallace, is quite understandable and perhaps even expected. The trial court misunderstood, apparently, the evidence. And of course, plaintiff bears some responsibility for not making it clear enough, but I think a defendant's artful pleading and some perhaps inadvertent misstatements of the record led to some of these problems. The court says at page 4 of its decision that Dr. Wallace, this is the plaintiff's expert, said that in her medical opinion, the surgical delays caused plaintiff to suffer a surgical drain infection. And they cite her deposition at page 61 and page 62. Nowhere at page 61 and page 62, and I submit to you nowhere in her deposition or her declaration or her supplemental report will you see her indicate that the delay in surgery caused a drain infection. The court at the next page says here the infection occurred not in the wound area, but in the area near the surgical drain. The court's using those words differently. One is a wound, one is a surgical drain site. And finally, the court concludes and bases its decision on page 7 as the court concludes that there is no issue of material fact as to the infection site's location. Well, I submit to you there is a great triable issue and there is significant evidence, especially when viewed in light most favorable to the plaintiff, that there was an infection at the lower back. First of all though, you might suggest that it doesn't really matter because as Dr. Wallace, perhaps not very articulately to lay people, communicated through her deposition that this endoscope was inserted, I'll use the arm instead of the back, up here to manipulate tissue down here. And in fact, maybe part of the reason it took 13 and a half hours is at one point she says, well I went into the armpit and I reinserted the endoscope there because I had to do it the old fashioned way because things weren't working out. And then she goes down here, which is where that breast tissue was, and she again is manipulating tissue. But that tissue, she says over and over again, is communicating the entire length of the endoscopic track. So it's not at all surprising to her that if bacteria enters the main surgical site, that you're going to find some bacteria here or some bacteria here at the other openings in the body. It makes common sense and that's what the medical literature that she cited supports. Thirteen and a half hours of surgery, it doesn't matter where you poke the holes, if they're all communicating with one another, the risk of infection is going to be greater. But let's just take her statement and what this case has always been about from the beginning. Not some drain in the armpit which defendant's own doctor who treated her says was very superficial, treated it, it resolved. No one filed a lawsuit about that. No one hired an expert about that. That was resolved before she was released from the hospital. They filed a lawsuit because she had a hole in her back the size of a baseball. And that hole was caused by the length of the surgery. That hole was infected. Is there a triable issue of factors to that? I think the smoking gun is located at page 130 of CR 22. That's the lab report. That lab report identifies the test as the wound culture. Now that's exactly the same word the court used to distinguish from a drain site. Said you have a wound and you have a drain site. This isn't the wound, this is the drain site, the court says. But that's not what the lab report says. The lab report at page 130 says the test is wound culture and it says site, right across from that. Incision, Perron's back. Now I submit to this court. But it doesn't say initial site of infection, the back. Isn't the theory of the defense that the infection to the back site traveled from the endoscopic axillary site? No it is not, the defense's position. And if they get up and say that I'll be very surprised. Their position is there's no infection in the back whatsoever and that this lab report refers to the armpit. They say there's an infection in the armpit and their own doctor Back is the armpit? That's what they're suggesting. In fact that's I guess what the court accepted because the court says there is no doubt, there is no tribal issue of fact that this infection was at the drain site in the axilla. And their surgeon says oh no no she didn't have any infection in the back. Now we also have some circumstantial evidence which supports this. The plaintiff's own photographs of her back which she was taking contemporaneous with the events that were happening and writing notes on before she even knew that we'd be before this court on this issue. On April 15th the picture she takes of her back says this is a photograph of the day after my wound was flushed out because of the infection. She testified in her deposition the doctor told me we're flushing out your back wound today to try to get rid of the infection. Which doctor told her that? I'm sorry? Which doctor told her that? The surgeon, Dr. Wandel, told her that. We also have the defendant's statement in its brief to the court and defendant Wandel's statement in her declaration, I'm sorry referred to her as the defendant, she's the surgeon that worked for the defendant, that says on the 14th I opened up this back wound and I debrided it and I took tissue out of it and I irrigated it and I ruled out infection on the 14th. The exact same day this sample was collected from what the lab says is the back. Now I submit to this court that a lab person, a medical person, just like a lay person, if they're going to describe the auxilia, the armpit, a drain site, they know the difference between that and the low back. The operative report certainly was able to make the distinction. It refers to the back wound in one place, it refers to the auxilia or the drain site in another place. So this certainly establishes a tribal issue of fact. We also have the deposition of plaintiff's expert. But you do agree that debridement can mean removal of infectious tissue or removal of interfering tissue, not necessarily infectious. It can. You need to look at Dr. Wallace's testimony and have her get up and tell the jury that debridement usually means, and in this case, what debridement meant to her. But you don't really need to get that far, I don't think. If a jury believes that the back means the back, you have scientific evidence. So you wouldn't be talking about the operative note, you'd be talking about the lab report alone. Yes. The reason I mentioned the operative note was to point out to this court that people don't mix up terms like back and auxilia in operative reports, and they don't mix them up in lab reports. Was there any testimony by Dr. Wallace that debridement in this case, in her expert opinion, meant removal of infected tissue? I think so. I think at pages 58, 59, and 60, or perhaps at 48, where she concedes there may have been some superficial infection in the auxilia, but she says, but what's the point? It's not relevant to what I'm trying to tell you here. She talks about tissue taking a big hit, and she talks about foreign, I'm sorry, I can't think of the term she talks about, removing dead tissue or ischemic tissue from the wound, and tissue taking a big hit, and because of that, you don't get sufficient blood flow, and sufficient blood flow is what happens. So she's saying, I look at this wound, and I look at all the trauma that happened, and all the dead tissue, and everything else, and I say, this is most consistent with infection. So you have a lab report, you have the testimony of our expert, either one of which should be enough, our expert, although she doesn't do it very artfully, if you read it in context, instead of pulling out things like the defendant has done, which are great things for cross-examination, but if you read it in context, she says over and over again, wound, wound, wound, wound, and every time they say armpit, axilla, axilla, she said, well, yeah, but, wound, wound, wound, it's all communicating. And finally, the third prong is the testimony of the plaintiff herself, who says, the doctor told me I had an infection in my low back, and that's why I kept going back for all this treatment, and why it had to be flushed out. So there's three pieces of evidence, I submit, that raise a clear tribal issue of fact as to the location of the infection. Thank you, counsel. Congress, good morning. Richard Toles, excuse me, from the U.S. Attorney's Office in San Diego, on behalf of APABI United States. In listening to Appellant's argument, I'm struck by the fact that I did not hear the word daubert spoken once. We are here because the district        Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.   Thank you. And to conclude, the medical experts' opinion on causation did not satisfy the standard articulated in Federal Rule of Evidence 702 and daubert. What method did Dr. Wallis use which did not pass the scientific scrutiny for the trial judge as a gatekeeper under daubert? As I understand what counsel said, there's three cases. First, there was a report saying that there was a wound culture in the back. That's based on percipient knowledge of the lab technician. I don't see a daubert issue in that case. Secondly, the plaintiff says the doctor defendant here made a party admission saying the wound was in my back. What's daubert about that? Third, there was a debridement by Dr. Wallis who removed dead tissue, according to counsel. What scientific method was objectionable about a surgeon describing ischemic tissue which has insufficient blood? Is there some daubert issue? I mean, it's not as if Dr. Wallis put her hands on the plaintiff and looked at Mars and said, I feel some vibrations, and therefore she has a back incision. That would be a daubert issue. Well, if I may, I will analogize, because I think that's about as scientific, your example, as was the plaintiff's methodology here, that of the plaintiff's medical effort. But what's scientific about perceptive knowledge? It isn't perceptive knowledge. There's the failure here on the part of the expert is to have any methodology at all. What happened was, and I'm willing to assume arguendo let me make this very easy. Assume arguendo that the plaintiff had a wound infection in her lower back. And that's what the plaintiff's medical expert thought. So let's go with that assumption and examine it and see whether daubert was satisfied or not. A daubert requires a methodology to go from mere association. And the plaintiff's medical expert pointed to four medical texts. She included excerpts of those snippets in her opposition to summary judgment. Some of those medical texts posited a mere association between operative length and wound infection. The problem with the medical text is that a mere association is not sufficient to show causation in a particular case. You have to do more than that. You have to have a methodology to go from mere association to cause and effect in a particular case. And that methodology needs to be explicit, it needs to be stated, and it needs to be scientifically proven. All right. So assuming that there was a wound infection in her lower back, what's your alternative causal hypothesis? For an infection in her lower back, that there was that were true. And we don't think the fact that supports that at all. No, you said that were true. There would be bruising. This is, I think the experts talked about this. There would be bruising, there would be necrosis following that. That's a hospitable environment for bacteria that would then cause... Right. No, but we're starting with the presumption that there was a wound and an infection in her lower back. Assuming that, what is your alternative causal hypothesis? I'm not sure I understand the question. I apologize. Well, I mean, basically you started by saying even assuming that there was a wound and a separate infection in the lower back, you have to reject out of hand because they haven't shown causation between the length of surgery and the wound. My question to you is if that's true, what is your alternative causal hypothesis for bacterial infection in the lower back? And your answer is it didn't happen in the lower back, but that, again, that defeats the, I mean, you take away the premise, the question goes away, of course. But if there is a wound in the lower back, as they allege, and there's factual, at least a tribal issue of fact may be on that, what's your expert's explanation? What's your explanation? I'm not sure our expert offered an explicit, you know, testimony on that point because he wasn't asked that question in his deposition. If he were, I would say that he would say there was bruising that was secondary to an inherent feature of this surgery, which was closing a wound under tension. It can create bruising in some cases. It happens without negligence. It happened here. And that bruising can lead to the death of the tissue from ischemia. Once tissue is no longer vital, it becomes a hospitable breeding ground for bacteria. That would be the alternative explanation. And that would be, I guess, based on the same type of speculation that the plaintiff's expert engaged in because it appears to me that neither side, well. Well, let me advert to two cases which I think are very clearly on point and very clearly dictate the, or demonstrate that the district court was correct in its rejection of the expert's theory under Dawbert in Rule 702. Dawbert 2, this Court's Dawbert opinion on remand from the Supreme Court, and the Court's 2002 opinion in Domingo v. TKMD, a diversity case medical malpractice matter. In both cases, the plaintiffs posited an association between a supposed risk or cause and a medical injury. In Dawbert, there were animal studies, human studies, and the chemical structure of Vendictin, Vendictin itself, which were said to be associated with birth defects. The Court said, ah, but they haven't shown any methodology to move from their association to a cause and effect relationship in these plaintiffs. Kennedy. But wait a minute. Ever since Dr. Lister in the 19th century, rapid operations have been safe operations because an open wound is more subject to infection from the air. Is that not something which we can all agree on? I think that's a question of science that requires expert testimony. And Dr. Wallace came with four texts in her supplemental declaration and said everybody agrees that fast surgery is safe and sterile surgery. Those texts do not say that. They posit that wound infection can be a factor out of 30 other factors, none of which were ruled out in this case, none of which were ruled out. You need look no further than Dawbert II to end the inquiry at that point. There was a Dr. Palmer, I believe, in Dawbert II or in Dawbert who posited cause and effect relationship between Vendictin and birth injuries. And Dr. Palmer had failed to rule out alternative causes. What the Court said of Dr. Palmer in Dawbert II at page 1319 of the opinion is no understandable scientific basis is stated. Maybe not evidence is taught here. Let me interrupt you for a second. What do you make of our cases that say that even after Dawbert that a medical doctor's testimony regarding a cause of an injury may be based on experience and medical records? You seem to be arguing that we need to have an independent scientific examination or, I'm sorry, a journal peer-reviewed article on which I think you could probably easily find, but as to this particular circumstance. But what's wrong under our case law about a medical doctor testifying about causation on the basis of experience and medical records? There's nothing wrong with that. That's perfectly acceptable, but the opinion must be supported by scientifically valid or at least valid methodology. Kumho-Tired, Supreme Court's decision following Dawbert, expands Dawbert from scientific questions, purely scientific, to experiential questions and calls for an inquiry into the methodology that an expert uses, even if we're talking about tires. Are you making a point that some California cases make that unless the testifying doctor says the probability is more than 2.0 to 1, it is not a probability, and in failing to rule out the other causes for infection, she never testified to that greater-than-not probability? Yes, Your Honor, I am making that point. That point was not one that I invented, and it's not limited to State court decisions. It's a point that Judge Kaczynski found of decisional significance in Dawbert on remand. But, you know, I think you were misplacing your reliance on the Benedictine case. That's a very different sort of case than the one involving a single doctor talking about a single wound. It's just you're making a transition. But I wanted to ask you about the court's opinion where Judge Whalen says, the court concludes there is no issue of material fact as to the infection site's location. Dr. Wallace's testimony must be excluded as unreliable. So that ruling is based on his mistake about the site of the infection, is it not? That's true. And contrary to the suggestion of appellant, there was absolutely not a shred of evidence to support an infection in the lower back wound. The textual support for the doctor's opinion was totally inappropriate. Well, we've heard quite a lot of evidence as to where the site was, and I don't think you can and you started to say you would have to assume that. I think you have to. I don't. How do you combat the three facts that were cited as showing that there's at least a dispute? The lab report lacked any foundation. It was never testified to. It does not speak for itself. There were three words on that lab report. Back, incision, and staphylococcus. Isn't that just a document in the course of business? It's a technical document in a medical case that requires foundational testimony to establish what it refers to. And Judge Whalen looked at it and said this evidence lacks a foundational basis to permit me to draw any inference from it. What about the plaintiff's own testimony? The plaintiff never testified that she had an infection in her lower back wound. She specifically disclaimed that. It's at page 28 of our brief, Your Honor. Let's just turn to it. Her testimony when asked if she was told that she had an infection and was asked where it was, if she was asked was she told where she had an infection, where her infection was located, her testimony was, I don't recall. I don't recall. And certainly the Navy surgeon who performed the surgery and performed follow-up care for the plaintiff testified unequivocally in her deposition that there was no infection in the low back. Beyond that, plaintiff's expert in her deposition testimony accepted without issue that there was no infection in the low back. Well, wait a minute. What about this testimony of the plaintiff where it says, I'm looking now at page 82, and she says, well, when she came in the room I asked her, is this where you took my skin and tissue? And she says, no, I took it from down there and pointed there was a scission there on my back. I mean, she's. Yes. But again, when specifically asked were you told where that infection was located, she said, no, I don't recall. I mean, she was asked very clearly about that. And she. Well, I mean. She disclaimed knowledge. You have two somewhat different statements, but they could be reconciled. One, she doesn't remember where the doctor told her. But two, she does remember where the doctor said she took the skin. Sure. And to avoid the problems that are involved, although I must admit, I do not believe that there's an evidentiary foundation for an inference of a wound infection here. But to get us out of that problem, I suggest to you that, or was attempting to suggest, that we are happy to assume argumentative that there was no wound, that there was, in fact, a wound infection. And still, under Dawbert, you've come to the conclusion that there is no evidence to support a cause-and-effect relationship in this case. There was nothing in the medical text to indicate that a 10-hour surgery was long enough to even create any risk of infection over above the background risk. There was nothing in that medical literature to suggest that the risk of infection increases as operative length increases. Just a bare association. Indeed, the one article that was most on point that dealt with breast infection disclaimed that there was sufficient scientific data to draw any inference that complications such as wound infection could be associated in breast surgery with operative length. It specifically disclaimed that. So what we're proceeding on is the doctor's impression, her personal opinion and conclusion, only unsupported by any scientific data or evidence or studies or even a theory. You're way over your time now. Thank you. Yeah, thanks. We'll give you a couple minutes for rebuttal, to be fair. I have never thought this was a Dawbert issue. You have a treating physician who's also an expert who opines after doing 140 of these procedures herself and knowing what she's been trained and what she learned in medical school, it's based on her experience and her training that the length of the surgery, and she was asked, do you rule everything else out? And she said, I've considered it. She's not a smoker. She's not obese, blah, blah, blah. I've ruled out all kinds of things. This is the most likely, in my opinion, beyond, I'm sorry, in my opinion, to a reasonable medical probability, this was caused by the length of the surgery. There is a place in her deposition testimony, Mrs. Sullivan, where she specifically is asked, what happened that day? That's the day she flushed out my lower back and told me she was trying to get the infection flushed out of my lower back wound. Dr. Wallace read the lab report and interpreted it, if it needs any more foundation. In her declaration or amended report, she said, I've looked at the lab report. It indicates there's an infection in the back. The trial court made its decision for only one reason, and that is because it said there is no triable issue of fact about the location of this wound. In fact, the trial court got confused for whatever reason. In fact, there is clearly a triable issue of fact, and the jury ought to decide whether Dr. Wallace's testimony about the cause is valid or not. Thank you. Thank you, counsel. The case is heard and will be submitted. We thank counsel both for your excellent arguments this morning. We'll proceed to the next case on the oral argument calendar, which is United States v. Thanks.
judges: Noonan, Thomas, Bea